(112 So. 525)

### No. 28341.

### Succession of ROSENTHAL.

March 28, 1927.   Rehearing Denied April 25, 1927.

*(Syllabus by Editorial Staff.)*

1. **Constitutional law ⬅283—Taxation ⬅868 (1)—Louisiana resident's transfer by will of bonds never physically within state to persons not residents held subject to inheritance Tax (Act No. 127 of Extra Session 1921 [amended in part by Act No. 44 of 1922], and § 2; Const. U. S. Amend. 14).**

Where resident of state of Louisiana by will bequeathed bonds of city of New York, which were never physically within the state, to person not resident of the state, *held* transfer ·was taxable under Act No. 127 of Extra Session 1921 ·(amended in part by Act No. 44 of 1922), and section 2, without violation of due process clause of Const. U. S. Amend. 14.

2. **Constitutional law ⬅251—Amendment 5 is not limitation on powers of states, but only of federal government (Const. U. S. Amend. 5).**

Const. U. S. Amend. 5, is not a limitation on the powers of the several states, but only on the powers of the federal government.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

163 LA.—22

In the matter of the succession of Joseph M. Rosenthal, Max M. Tannenbaum, and Hannah N. Tannenbaum, executors. From a judgment holding legacies to Mose Tannenbaum and Hannah N. Tannenbaum not subject to inheritance tax, John J. O'Neill, ex officio inheritance tax collector, appeals. Judgment annulled and set aside, and cause remanded.

Harry Gamble, of New Orleans (Harry Gamble. Jr., of New Orleans, of counsel), for appellant O'Neill.

Benjamin Y. Wolf. Dart & Dart, L. C. Guidry. Lemle. Moreno & Lemle, all of New Orleans, for appellees Tannenbaum and others.

OVERTON, J.   [1] The question presented by this appeal is whether an inheritance tax is due the state for the privilege of acquiring by will certain of the property left by Joseph M. Rosenthal at his death.

The deceased was a resident of the city of New Orleans and a citizen of the state of Louisiana.  He died testate on March 23, 1926, while temporarily absent on a visit to Switzerland.  His will was written in New Orleans. Some of the property bequeathed by him consisted of 85 bonds of the city of New York, of the par value of $1,000 each; 55 of these bonds, 10 of which are dated September 18, 1908, 10, September 9, 1910, and 35, June 27, 1912, all of which bear 4 per cent. per annum interest payable on May 1st and November 1st of each year, he willed to his niece, Hannah N. H. Tannenbaum, of New York City.  The remaining 30 bonds, 15 of which are dated March 9, 1908, and 15, June 27, 1912, all of which bear 4½ per cent. per annum interest, payable on May 1st and November 1st of each year, he willed to his nephew, Moses Tannenbaum, of Brooklyn, N. Y.  The bonds, comprising these legacies, have never been in the state of Louisiana.  The deceased, when he acquired them, deposited them in a bank vault in New York City, where they remained

for a number of years, and were there at the time of his death.

The statute that levies the taxes claimed herein is Act No. 127 (Extra Session) of 1921, as amended, in part, by Act No. 44 of 1922. In the second section of the statute it is provided that:

"Said tax shall be imposed with respect to all property of every nature and kind included or embraced in any inheritance, legacy or donation or gift made in contemplation of death, including all personal property physically in the state of Louisiana, whether owned or inherited by, or bequeathed, given, or donated to, a resident or non-resident, and whether inherited, bequeathed, given or donated to, under the law of ᵗʰis state or of any other state or country; and all personal property owned by residents of the state of Louisiana, wherever situated, unless such property shall be included in the exemptions above set forth."

The contention of the testamentary executors and the legatees, named herein, is that to hold that the privilege of acquiring said bonds by will, when they were not kept in this state, and when they were never physically present therein, is subject to an inheritance tax, would be contrary to, and in violation of, article 5 of the Constitution of the United States and the Fourteenth Amendment to that Constitution.

[2] Article 5 of the Constitution has no pertinency whatever to the question before us, and so clearly is this the case that it is obvious that what is meant is the Fifth Amendment, and what was intended to be pleaded is that to allow the tax in this instance would contravene the due process clause of that amendment. This amendment, however, is not a limitation upon the powers of the several states, but only upon the powers of the federal government, and therefore does not affect the question presented. McFaddin v. Evans-Snider-Buel Co., 185 U. S. 509, 22 S. Ct. 758, 46 L. Ed. 1012. However, as we have said, it has been also pleaded that to allow the tax would contravene the Fourteenth Amendment; which, by its very terms, is applicable to the states, and the question is whether to allow the tax demanded is sanctioned by the statute, and whether to do so would contravene the due process clause of that amendment.

The state has imposed an inheritance tax, as appears from the closing lines of the excerpt, quoted above from the act of 1921, with respect to "all personal property owned by residents of the state of Louisiana, wherever situated, unless such property shall be included in the exemptions above set forth," which exemptions, referred to, it may be said, are legacies and donations made to charitable, religious, and educational institutions, located in the state, and legacies, as also donations made in contemplation of death, as well as inheritances, from $500 up to $5,000, depending upon whether the legacy or donation is made to a stranger, or whether the inheritance, legacy, or donation falls, or is made, to a collateral relative, or to one in the ascending or descending line, or to a surviving spouse. The tax imposed, with respect to legacies to collateral relatives, is 5 per cent. of the actual value of the legacy at the time of death on the amount in excess of $1,000 up to $20,000, and 7 per cent. of the value on the amount in excess of $20,000.

Since the deceased, at the time of his death, was a resident of this state, it is clear, under the very terms of the act of 1921, imposing an inheritance tax with respect to the transmission by will of all personal property, owned by residents of this state, wherever the property is situated, an inheritance tax is imposed by the act on the legacies in this instance, although the bonds conveyed by the will, and comprising the legacies, were never in the state. The only question, therefore, as stated above, is, Did the Legislature have the right to impose the tax without violating the due process clause of the Fourteenth Amendment?

In Bullen v. Wisconsin, 240 U. S. 625, 36 S.

Ct. 473, 60 L. Ed. 830, to quote from the syllabus, which correctly states the ruling made, it was said:

"A fund represented by stocks, bonds, and notes kept in a state other than that where the decedent resided, which he conveyed upon certain trust to a trust company of such other state, reserving to himself an absolute power of control, which he exercised during his life by a revocation (followed by a second conveyance to the trust company upon the same terms), and by taking the whole income for himself, may be subjected to an inheritance tax in the state of his domicile, without violating the 14th Amendment or the contract clause of the Federal Constitution."

In Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316, the question presented was the right of the state in which the decedent was domiciled to impose a tax on the transfer of tangible personal property by will, located or kept in other states; the property consisting, as appears from a note to the decision, of paintings, rugs, furniture, tools, and the like. It was held by the Supreme Court in that case that the state in which the deceased was domiciled could not impose such a tax, for to do so would contravene the due process clause of the Fourteenth Amendment. It was also held in that case that the case of Bullen v. Wisconsin, supra, was applicable only to intangible, or incorporeal, personal property. The court, in referring to the Bullen Case and to another case, both of which were cited by the state of Pennsylvania to support its contention that the transfer of the property by will in its case could be taxed by it, notwithstanding the situs of the property, the deceased having been domiciled within its borders, said:

"Counsel for the state cite and rely on Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, and Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830. Both cases related to intangible personalty, which has been regarded as on a different footing from tangible personalty. When they are read with this distinction in mind, and also in connection with other cases before cited, it is apparent that they do not support the tax in question."

In other words, the court in the Bullen Case sustained the tax, because the property there, which consisted of a fund embracing bonds, notes, and stock, was intangible personal property, but refused to sustain the tax in the Frick Case, because the property there was tangible, or corporeal, personal property. In the first case, it was considered, we take it, that the rule mobilia sequuntur personam applies, and that the transfer occurred under the laws of the state of the domicile of the deceased, and in the second case that the rule did not apply, and that the transfer occurred under the laws of the state where the property is located or employed, without regard to the domicile of the deceased. The Bullen Case is also authority for the proposition that bonds are intangible personal property. Hence, under the ruling in the Bullen Case, which has been explained and adhered to in the Frick Case, we feel constrained to hold that the transfer by will of the bonds in this case is subject to the inheritance tax, imposed by the act of 1921, as amended by that of 1922.

We have examined the opinions, rendered by this court, in the cases cited by the appellees. In our view, the cases cited may be differentiated from the case at bar. We find it unnecessary to discuss them here.

The trial court rendered judgment holding that the legacies were not subject to the tax. While this judgment must be reversed, still, in reversing it, we find that we are unable to determine with legal certainty, under the evidence before us, the exact value of the bonds, and therefore are unable to fix with reasonable precision the amount of the tax. Hence it will be necessary to remand the case, with instructions to render judgment in favor of the inheritance tax collector, after ascertaining the value of said bonds at the time of the death of the deceased, at the

rates 'as prescribed· in section 2 of Act No. 127 of 1921 (Extra Sess.), where the legacies are to collaterals.

For the reasons assigned, the judgment appealed from is annulled and set aside, and this case is remanded to the lower court to be proceeded with in accordance with the views and instructions herein expressed and contained.