*In re* ROGERS' ESTATE.

TAXATION—INHERITANCE TAX—NONRESIDENT DECEDENT—SITUS OF
PROPERTY.

    Mortgages, notes, and land contracts, representing property
    situated in Michigan, owned by and in actual possession of a
    nonresident at the time of his death in another State, are
    subject to the succession tax imposed by Act No. 195, Pub.
    Acts 1903, since collection of the debts secured upon land
    cannot be enforced, nor the estate properly administered and
    closed, without the aid of the laws of this State.

Case made from Livingston; Miner, J. Submitted
April 15, 1907. (Docket No. 54.) Decided July 15,
1907.

James B. Bradley, auditor general, appealed to the circuit court from an order determining that certain property
was not subject to an inheritance tax. There was judgment for the auditor general, and Polly M. Rogers, ancillary administratrix of the estate of Hosea Rogers, deceased, appeals. Affirmed.

*Shields & Shields*, for appellant.

*John E. Bird*, Attorney General (*J. Shurly Kennary*
and *Thomas Ambrose Lawler*, Assistant Attorneys
General), for appellee.

MOORE, J. This is a case brought for the purpose of
recovering, under the provisions of Act No. 195 of the
Public Acts of 1903, an inheritance tax. The probate
court held it could not be recovered. The circuit court
held it could. The facts are not disputed, and, briefly
stated, are as follows: Hosea Rogers died at his home in
the State of New York in 1904. Administration of the
estate was granted in New York. Ancillary proceedings
were had in Livingston county, in this State. All of the

estate which in this proceeding is sought to be bound with an inheritance tax consists of mortgages, notes, and land contracts. All the devisees, legatees, and heirs at law of Mr. Rogers reside in New York. At the time of his death all the mortgages, notes, land contracts, and papers representing property in the State of Michigan were in the actual possession of Mr. Rogers at his residence in New York, and were habitually kept by him at his residence in the State of New York. The mortgages were upon real estate in Livingston county, Mich., and were recorded in that county. Thomas Gordon, Jr., acted as agent for Mr. Rogers in making loans. He had temporary custody of the funds or securities. He never had power to discharge or modify mortgages or other papers, and acted at all times under the specific directions of Mr. Rogers.

It is the claim of the estate that the situs of this very property has been established as in the State of New York. *Village of Howell* v. *Gordon,* 127 Mich. 517. The domicile of the parties owning it, both at the time of Mr. Rogers' death, and now, is in the State of New York, and therefore the property is not subject to an inheritance tax in this State. Several authorities are cited in support of this claim, and it is insisted the case is controlled by the Iowa case of *Gilbertson* v. *Oliver,* 129 Iowa, 568 (4 L. R. A. [N. S.] 953). In that case the justice writing the opinion said:

"The controversy presents for determination but one legal question, namely: Was the property of the deceased within the jurisdiction of this State at the time of her death? There is a conflict in the adjudicated cases as to whether such evidences of indebtedness are taxable at the domicile of the owner, or whether the actual situs of such property, and not the domicile of the owner, determines the liability to taxation. The great weight of authority, however, supports the holding of our own cases that this species of personal property, which is in a sense intangible and incorporeal, is taxable at the domicile of the owner, and not elsewhere, unless the owner has himself given it a different situs."

This is not in harmony with *In re Stanton's Estate,*
142 Mich. 491.   On the part of the State it is insisted the
inheritance tax can be collected, and that the case is con-
trolled by *In re Stanton's Estate,* supra, *In re Mer-
riam's Estate,* 147 Mich. 630, and *Blackstone* v. *Miller,*
188 U. S. 189.

It is clear the mortgagee named in the mortgage
could not preserve his lien on the real estate against cred-
itors and subsequent purchasers without complying with
the registry law of the State.   If the debts secured by the
mortgages are not paid, they cannot be collected without
the aid of the laws of the State.   The estate of Mr.
Rogers cannot be properly administered and closed with-
out ancillary letters of administration obtained under the
laws of this State.   In this connection, the language used
by Justice Holmes in *Blackstone* v. *Miller,* supra, is
pertinent.   We quote:

" If the transfer of the deposit necessarily depends upon
and involves the law of New York for its exercise, or, in
other words, if the transfer is subject to the power of the
State of New York, then New York may subject the
transfer to a tax.   *United States* v. *Perkins,* 163 U. S.
625, 628, 629; *McCulloch* v. *Maryland,* 4 Wheat. (U.
S.) 316, 429.   But it is plain that the transfer does depend
upon the law of New York, not because of any theoreti-
cal speculation concerning the whereabouts of the debt,
but because of the practical fact of its power over the per-
son of the debtor.   The principle has been recognized by
this court with regard to garnishments of a domestic
debtor of an absent defendant.   *Chicago, etc., R. Co.* v.
*Sturm,* 174 U. S. 710.   See *Wyman* v. *Halstead,* 109
U. S. 654.   What gives the debt validity ?   Nothing but
the fact that the law of the place where the debtor is will
make him pay.   It does not matter that the law would
not need to be invoked in the particular case.   Most of us
do not commit crimes, yet we nevertheless are subject to
the criminal law, and it affords one of the motives for our
conduct.   So, again, what enables any other than the
very creditor in proper person to collect the debt ?   The
law of the same place.   To test it, suppose that New York
should turn back the current of legislation and extend to

debts the rule still applied to slander that actio personalis moritur cum persona, and should provide that all debts hereafter contracted in New York and payable there should be extinguished by the death of either party. Leaving constitutional considerations on one side, it is plain that the right of the foreign creditor would be gone.

"Power over the person of the debtor confers jurisdiction, we repeat; and, this being so, we perceive no better reason for denying the rights of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the State at the time of the death. The maxim 'Mobilia sequuntur personam' has no more truth in the one case than in the other. When logic and the policy of a State conflict with a fiction due to historical tradition, the fiction must give way.

" There is no conflict between our views and the point decided in the case reported under the name of *State Tax on Foreign-Held Bonds*, 15 Wall. (U. S.) 300. The taxation in that case was on the interest on bonds held out of the State. Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions. *Bacon* v. *Hooker*, 177 Mass. 335, 337. Therefore, considering only the place of the property, it was held that bonds held out of the State could not be reached. The decision has been cut down to its precise point by later cases. *Savings & Loan Society* v. *Multnomah County*, 169 U. S. 421, 428; *New Orleans* v. *Stempel*, 175 U. S. 309, 319, 320. In the case at bar, the law imposing the tax was in force before the deposit was made, and did not impair the obligation of the contract, if a tax otherwise lawful ever can be said to have that effect. *Pinney* v. *Nelson*, 183 U. S. 144, 147. The fact that two States, dealing each with its own law of succession, both of which the plaintiff in error has to invoke for her rights, have taxed the right which they respectively confer, gives no cause for complaint on constitutional grounds. *Coe* v. *Errol*, 116 U. S. 517, 524; *Knowlton* v. *Moore*, 178 U. S. 53. The universal succession is taxed in one State; the singular succession is taxed in another. The plaintiff has to make out her right under both in order to get the money. See *Adams* v. *Batchelder*, 173 Mass. 258."

It is suggested that because, when the opinions in *Re Stanton's Estate*, and in *Re Merriam's Estate*, supra,

were written, the cases arose under section 21, Act No. 188 of the Public Acts of 1899, as section 21 has been amended, those cases are not controlling. The amendment is found in Act No. 195 of the Public Acts of 1903. It consists simply in eliminating from section 21 the words "over which this State has any jurisdiction for the purposes of taxation." We do not think the effect of the amendment is to narrow the provisions of the statute as they existed when the decisions were rendered. We think the case in principle is within *In re Merriam's Estate,* and *Blackstone* v. *Miller*, supra.

Judgment is affirmed.

McALVAY, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.