## DOMENECH, Treasurer, v. UNITED PORTO RICAN SUGAR CO.
### No. 2690.

Circuit Court of Appeals, First Circuit.
Dec. 29, 1932.

William Cattron Rigby and Fred W. Llewellyn, both of Washington, D. C. (Charles E. Winter, of San Juan, Puerto Rico, and Blanton Winship, of Washington, D. C., on the brief), for appellant.

Henri Brown, of San Juan, Puerto Rico, for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This action is brought by the Treasurer of Puerto Rico against the United Porto Rican Sugar Company, a Puerto Rican corporation, to collect taxes alleged to be owed by certain Maryland banks and other Maryland corporations, assessed against these corporations upon income of, or payments of interest made to them by, certain Puerto Rican corporations (defendant's predecessors whose obligations it assumed) on loans contracted in Maryland, the principal and interest of which were payable and paid in Maryland, which taxes it is alleged the defendant's predecessors should have retained and paid to the plaintiff.

The action was brought in the District Court of San Juan. The defendant filed an answer admitting certain facts alleged in the plaintiff's declaration and averring certain other facts, to which the plaintiff demurred on the ground that the facts set up in the answer did not constitute a defense. The District Judge sustained the demurrer and entered judgment for the plaintiff. On appeal to the Supreme Court of Puerto Rico, the judgment of the District Court was reversed, and the action dismissed. This appeal is from the latter judgment.

It is stated that the answer, the original draft of which is in Spanish, is inadequately transcribed, but that the facts set out in the answer are correctly stated in the appellant's brief and the opinion of the Supreme Court.

The facts are that Central Pasto Viejo, Inc., Juncos Central Company, and Caguas Sugar Company, all Puerto Rican corporations and predecessors of the defendant, entered into contracts at Baltimore, Md., with several Maryland banks and corporations whereby they obtained loans of money, in which it was stipulated that the principal and interest should be payable in Baltimore; that the money loaned was delivered to the Puerto Rican corporations in Baltimore, and that the payments of interest constituting the income here taxed were made in Baltimore; that none of the Maryland corporations were engaged in business in Puerto Rico, and had no office, place of business, or agent in Puerto Rico; that part of the money thus loaned was used by the borrowers in the United States and part in Puerto Rico; that the Puerto Rican corporations were engaged in the purchase of sugar cane and the manufacture of sugar therefrom in Puerto Rico; and that they sold the manufactured sugar in New York and in other states of the Union or places outside of Puerto Rico. The Caguas Sugar Company paid interest to its Maryland creditors from

which it is alleged that it should have withheld as taxes of the creditor corporations for the years 1924, 1925, 1926, and 1927 the sums of $13.74, $1,989.01, $3,081.61, and $12,460.34, respectively; that the Central Pasto Viejo, Inc., paid its creditors interest from which it is alleged that it should have withheld as taxes of the creditors for the years 1926 and 1927, the sums of $822.90 and $1,295.20, respectively; that the Juncos Central Company paid its creditors interest from which it should have withheld taxes of the creditors for the years 1926 and 1927, the sums of $2,365.95 and $10,423.73, respectively—or a total of $32,452.48, which the plaintiff seeks to recover, plus interest at 12 per centum per annum from the filing of the complaint.

The errors assigned are that the court erred (1) "in holding that the defendant is not obliged to pay taxes on interest paid to various foreign corporations in the United States by certain domestic corporations which had assigned their assets and liabilities to the defendant, and whose taxes were due according to section 3 of Law No. 43 of 1921"; (2) "in holding that debts for interest have not a taxable situs in Puerto Rico"; (3) "in not holding that, irrespective of the situs of intangible property, a corporation can be taxed in Puerto Rico for income received from Puerto Rico when the interest is paid by the debtor in Puerto Rico and sent from Puerto Rico to the continental United States, as was the case in the present suit"; (4) in not sustaining the demurrer to the answer; (5) "in reversing the judgment of the District Court"; and (6) "that the judgment is contrary to law."

Section 3 of Act No. 43, Laws of Porto Rico, 1921, so far as material to this case, provides:

"Sec. 3. All income defined herein received or earned by citizens of the United States * * * residing * * * without Porto Rico, and by any corporation * * * organized * * * in the United States * * * and * * * who in any way derive income from sources located in this Island, or from the sale in Porto Rico or elsewhere of fruits, products or manufactures harvested, produced or manufactured in Porto Rico, shall be subject to the payment of the income tax hereby established."

Section 9 of the Act of 1921, so far as here material, defines the gross income of a corporation organized in the United States, as follows:

"Sec. 9. In the case * * * of a corporation * * * organized * * * in the United States * * * the gross income includes only the gross income derived from sources within Porto Rico, or from the sale in the Island or elsewhere of the fruits, products or manufactures harvested, produced or manufactured in Porto Rico, including also rents, interest on bonds, notes, mortgages or other interest-bearing obligations of residence [residents], whether individuals, corporations or entities of any kind."

A like provision is contained in Act No. 74 of the Laws of Porto Rico of 1925, section 31 (b) and section 19 (a) (1), so that, under the Act of 1925, as well as under the Act of 1921, it is provided that, in case of a foreign corporation, the following items shall be treated as gross income from sources within Puerto Rico:

"(1) Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise."

Act No. 43, of July 1, 1921, in section 49, provides:

"Section 49. The tax levied hereunder shall be withheld by every * * * corporation * * * who pay interest, rents, salaries, annuities, compensation or any other income subject to taxation, except dividends * * * of any citizen of the United States, nonresident of Porto Rico * * * or of any foreign corporation * * * not engaged in business in Porto Rico and which has no place of business, office or agent in Porto Rico."

And the corresponding section in Act No. 74 of the Laws of 1925 provides:

"Section 35.—In the case of foreign corporations * * * subject to taxation under this title not engaged in trade or business within Porto Rico and not having any office or place of business therein, there shall be deducted and withheld at the source in the same manner and upon the same items of income as is provided in section 22 a tax equal to 12½ per centum thereof, and such tax shall be returned and paid in the same manner and subject to the same conditions as provided in that section."

And section 22 (b) provides:

"(b) Every person required to deduct and withhold any tax under this section shall make return thereof on or before March 15 of each year and shall on or before June 15 pay the tax to the official of The People of Porto Rico authorized to receive it. Every such person is hereby made liable for such tax and is hereby indemnified against the claims and demands of any person for the amount of any payments made in accordance with the provisions of this section."

It is evident from a reading of the foregoing provisions of the Acts of 1921 and 1925 that the Maryland creditor corporations, although not engaged in trade or business in Puerto Rico and having no office or place of business there, are, by those laws, made subject to taxation upon "interest on bonds, notes or other interest bearing obligations of" Puerto Rican corporations; that the tax is one imposed upon nonresident creditor corporations, and is based upon or measured by the income or interest they receive or are entitled to receive on obligations of resident Puerto Rican corporations; and that this is so even though the obligations they own were incurred in the United States and the principal and interest which they represent were made payable and were paid in the United States.

■■ The Supreme Court of Puerto Rico, in construing these acts, was of the opinion that "the tax is imposed on the creditors or the credit"; it did not undertake to determine which. It held, however, that the tax was illegal whether imposed on the nonresident creditor or upon the credit—the debt. We think it is indisputable that the tax is imposed on the nonresident creditor and is one measured by the income or interest on the loan or loans for a given year; that it is not simply a tax on the credit or debt. The question then is whether the Legislature of Puerto Rico had jurisdiction and authority to levy an income tax upon nonresident creditor corporations which had no place of business in Puerto Rico and did no business there through agents or otherwise. The answer to the question is so self-evident that the mere statement of the proposition is its own answer. The Legislature of Puerto Rico is without authority or jurisdiction to impose a tax upon nonresident corporations measured by income earned or to be earned upon transactions entered into and wholly performed beyond the confines of Puerto Rico. It has no greater power in this respect than a state.

■ But if it could be said that the acts in question did not impose a tax upon the nonresident creditors, but was one imposed upon the credit or debt, of which the interest is in fact a part, that debt or credit had no situs in Puerto Rico. Its situs was in Maryland, outside the jurisdiction of Puerto Rico, and the Legislature of Puerto Rico had no authority or jurisdiction over it and could not tax it. The debt was a mere chose in action or intangible personal property, the situs of which was in Maryland where the creditor corporations were organized and did business. The question of the taxable situs of a debt has been put to rest by the recent decision of the United States Supreme Court in Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 100, 74 L. Ed. 371, 65 A. L. R. 1000, in which the doctrine previously announced in Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, was expressly overruled, and the holding in Cleveland, P. & A. Railroad Company v. Pennsylvania State Tax on Foreign-Held Bonds, 15 Wall. 300, 320, 21 L. Ed. 179, was reaffirmed. In speaking of that case, it was there said:

"Cleveland, P. & A. Railroad Co. v. Pennsylvania—'State Tax on Foreign-Held Bonds Case'—15 Wall. 300, 320, 21 L. Ed. 179, distinctly held that the state was without power to tax the owner of bonds of a domestic railroad corporation made and payable outside her limits when issued to and held by citizens and residents of another state. Through Mr. Justice Field the Court there said:

" 'But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors, is simply to misuse terms. All the property there can be in the nature of things, in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicil, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations in numerous adjudications, but no number of authorities and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement.' "

■ Counsel for the plaintiff have argued that this tax might be supported as a tax in rem upon the interest. But this contention is without merit, for the interest is a part of the debt and had its situs in Maryland where the creditor corporations were organized and resided. Farmers' Loan Co. v. Minnesota, supra.

■ It is also contended in behalf of the plaintiff that the tax may be supported as an excise tax, but the answer to this is that the creditor corporations did no business and exercised no privileges within the Island of Puerto Rico.

It is further contended that Congress, in the Federal Income Tax Acts (see 26 USCA § 931 et seq.) has authorized the imposition of a

tax on interest or income on bonds or interest-bearing securities held by citizens of foreign nations, the obligations of individuals domiciled in the United States or of corporations organized and doing business here. Whether Congress has the power to impose such a tax and require the resident debtor to withhold it at the source out of the interest due the foreign creditor, we are not called upon to decide. However, the Supreme Court, in some of its opinions, has pointed out that the taxing power of Congress is not subject to the same territorial limitation as that of a state. United States v. Bennett, 232 U. S. 299, 34 S. Ct. 433, 58 L. Ed. 612; Cook v. Tait, 265 U. S. 47, 44 S. Ct. 444, 68 L. Ed. 895. In the latter case, the court said, at page 55 of 265 U. S., 44 S. Ct. 444, 445, 68 L. Ed. 895:

"We may make further exposition of the national power as the case depends upon it. It was illustrated * * * in United States v. Bennett by a contrast with the power of a state. It was pointed out that there were limitations upon the latter that were not on the national power. The taxing power of a state, it was decided, encountered at its borders the taxing power of other states and was limited by them. There was no such limitation, it was pointed out, upon the national power, and that the limitation upon the states affords, it was said, no ground for constructing a barrier around the United States, 'shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty.'"

It is not and cannot be contended that Puerto Rico, under its Organic Act (39 Stat. 951), is given authority to enact laws authorizing the imposition of taxes such as are here sought to be enforced and which a state would not be authorized to impose. A state is restrained from so doing by virtue of the due process clause contained in the Fourteenth Amendment to the Federal Constitution, and Puerto Rico is restrained from so doing by virtue of a like provision in its Organic Act (Act of March 2, 1917, c. 145, § 2, 39 Stat. 951 [48 USCA § 737]).

While we have not dealt with each assignment of error by specific reference thereto, we have considered the questions necessary to a disposition of this case, whether assigned or not. It may be noted, however, that the third assignment as drawn is without application, for it is a complete misstatement of the facts here presented for consideration.

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.